NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | Civ. No. 06-1894 (GEB) |
| v. : | **MEMORANDUM OPINION** |
| PENNY LANE PARTNERS, L.P., : | |
| Defendant. : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motions of Abraham Herbst and Jackie Herbst ("the Herbst Parties") objecting to the Receiver's recommended disposition of their respective claims (Docket Nos. 89, 90). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the filed briefs and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons set forth below, will deny Abraham Herbst's motion in full and grant in part and deny in part Jackie Herbst's motion.

**I.   BACKGROUND**

Penny Lane Partners, L.P. ("PLP") is a Delaware limited partnership that was licensed by the United States Small Business Administration ("SBA" or "Receiver") as a Small Business Investment Company ("SBIC") and as such, received funds from the SBA and was subject to certain regulations. On April 24, 2006, the SBA filed a Complaint against PLP alleging that PLP failed to comply with the limits on capital impairment set forth in 13 C.F.R. § 107.1830. The

SBA subsequently moved to be appointed receiver for PLP, and by an order dated May 16, 2006 ("Receivership Order"), the Court granted the SBA's motion. Pursuant to the Receivership Order, all civil legal proceedings involving PLP were stayed, including a New York state court action filed by the Herbst Parties and Joseph Ratner against PLP and others in January 2003 ("the Herbst Litigation").[1]

On November 9, 2007, the Receiver filed a motion for entry of an order approving the receiver's notice and determination of claims and establishing summary disposition procedures and priority of claims. In its November 9, 2007 filing, the Receiver recommended, in relevant part, as follows:

> **Claim #6: Multiple claimants - claim amount unspecified**
> Claimants are limited partners of PLP. This is a joint claim by Messrs. Jackie Herbst, Abraham Herbst and Joseph Ratner. This claim results from litigation stayed by the Receivership Court and referred to as the 'Herbst' Litigation. The claimants allege a variety of wrong doing by the management of PLP including but not limited to fraud, unjust enrichment, breach of fiduciary duty, insider trading etc.
> **Recommendation:**
> As stated with respect to the recommendation for the claim by Mr. Rozenberg, (claim No. 5 above) the multiple claimants do not present a recognizable claim. There was a litigation that was commenced by the multiple claimants against PLP, which remains stayed by the Receivership Court Order. The multiple claimants have not made application to this Court to lift the stay. The Receiver also believes that the multiple claimants do not have standing to pursue wrongdoing with respect to the management of PLP; such claim represents a derivative action that may only be asserted by the Receiver. The multiple claimants do not present a claim for a monetary amount. The Receiver recommends denial of this claim.

(Receiver's Notice and Determination of Claims Received in Response to the Claims Bar Date

---

[1] Joseph Ratner has not objected to the Receiver's recommended disposition of his claim.

(Docket No. 59) at 7-8.)[2]

Subsequently, on December 17, 2007, Jackie Herbst filed a *pro se* motion to intervene and lift the stay. On the same date, Abraham Herbst filed a *pro se* motion to intervene. On February 1, 2008, Magistrate Judge Hughes denied the motions to intervene and denied Jackie Herbst's motion to lift the stay.

On February 28, 2008, the Court granted the Receiver's motion and approved the Receiver's recommendations ("February 28 Order"). In the February 28 Order, the Court provided, in relevant part, that "[a]ny claimant who opposes the Receiver's recommended disposition of its claim . . . is hereby ordered either to file a motion objecting to the Receiver's

---

[2] The receiver's recommendation for the claim of Mr. Rozenberg is as follows:

**Claim #5: Kenneth Rozenberg- claim amount unspecifed**
Claimant is a limited partner of PLP. Mr. Rozenberg is represented by Mr. Isidor Friedenberg. Mr. Kenneth Rozenberg has signed and submitted a claim that alleges fraud, mismanagement, improper record keeping and self-dealing as well as other issues by the PLP general partners. He also identifies six areas of failure by the SBA regarding oversight of PLP activities. Mr. Rozenberg states that his correct PLP commitment amount was $115,000 not $230,000 as initially reported by PLP. He states that PLP incorrectly switched his comitment amount with another limited partner, Mr. Leaonard Fuchs.
**Recommendation:**
Mr. Rozenberg does not state a recognizable claim. Mr. Rozenberg is a private limited partner and does not have standing to assert a derivative claim. Further, SBA's decision to take regulatory action, or not, is discretionary and cannot be challenged by Mr. Rozenberg or any private limited partner. Only the Receiver would have the right to assert a derivative claim. The United States Small Business Administration is a government agency and is not a party to the Receivership Court proceeding. The United States Third Circuit Court of Appeals has held that private limited partners could not assert general fraud claims against the SBIC or Receiver because such claims are derivative in nature and are held by the Receiver.
Mr. Rozenberg signed a $230,000 commitment page at the start of the partnership in 1996. The books and records (including the annual K-1 schedules) of Penny Lance Partners LP indicate that he has an outstanding unfunded capital commitment of $100,625. Based on Mr. Rozenberg's failure to state a recognizable claim as set forth above the Receiver recommends denial of this claim. Further, release of private limited partners are ineffective absent SBA approval. SBA has rejected any release of these private limited partners.

recommended disposition of its claim . . . within 30 days from the date of service of a copy of this Order by the Receiver on the claimant, or such claimant's claim shall be forever barred." (February 28 Order ¶ 10.)

On April 2, 2008, the Herbst Parties filed, *pro se*, the present nearly identical objections to the Receiver's recommended disposition of their claims.[3] On May 2, 2008, the Receiver filed its opposition to the Herbst Parties' objections.

## II. DISCUSSION

### A. Standard of Review

Although neither party sets forth the standard under which the Court should review a motion objecting to a receiver's recommended claim dispositions, at least one other court has held that "[i]n accepting or rejecting the claims of creditors, as well as in filing a report of finding of fact and conclusions of law, a receiver acts like a master." United States v. Fairway Capital Corp., 433 F. Supp. 2d 226, 231 (D.R.I. 2006) (citing 3 Ralph Ewing Clark, Clark on Receivers § 650, 657 (3d ed. 1959)), aff'd 483 F.3d 34 (1st Cir. 2007); see also U.S. v. Moneta Capital Corp., 441 F. Supp. 2d 398 (D.R.I. 2006) ("[i]n accepting or rejecting the claims of creditors, a receiver acts like a master"). Under Rule 53(f), the Court reviews *de novo* all objections to findings of fact and conclusions of law made or recommended by a master. FED. R. CIV. P. 53(f)(3)-(4). Rule 53(f)(1) provides that:

> Opportunity for a Hearing; Action in General. In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.

---

[3] Because the objections of Abraham and Jackie Herbst are identical in all relevant respects, the Court will hereinafter cite only to the objections of Jackie Herbst (Docket No. 90).

4

FED. R. CIV. P. 53(f)(1). However, a court may employ "summary procedures" in allowing or disallowing claims. Fairway Capital, 433 F. Supp. 2d at 241; see also Fairway Capital, 483 F.3d at 45 (approving district court ruling that "treated the Receiver's Report and Recommendation much like a summary judgment").

Here, the Receiver has concluded that the Herbst Parties do not state a claim. It appears that the Receiver evaluated the claims in the Herbst Litigation under a standard similar to that used on a Rule 12(b)(6) motion to dismiss. Thus, the Court will review that determination de novo.

B. **Parties' Arguments**

The receiver argues that the Herbst Parties do not state a cognizable claim because the claims are largely derivative and as such, the Herbst parties have no standing to assert them. The Receiver contends that any direct claims asserted by the Herbst Parties' are insufficient to state a claim and that there is no evidence to support the claims.

The Herbst Parties, apparently unaware that the Court denied their Motions for Leave to Intervene in this matter, argue that such intervention is proper and that the Court should lift the stay with respect to the Herbst Litigation. The Herbst parties also appear to argue that although "mismanagement is certainly a claim made against Penny [L]ane" in the Herbst Litigation, not all of its claims are derivative. (Jackie Herbst's Objections ¶ 44.) The Herbst Parties allege that they have been deprived of their "right to due process" and that the Receiver "has conducted this entire campaign in bad faith." (Id. ¶¶ 49, 60.)

C. **Analysis**

The Herbst Parties' claims are based on the Herbst Litigation. The complaint in the

Herbst Litigation alleges sixteen, often overlapping, causes of action.  (Affidavit of William Van Der Weele, Ex. A ("Herbst Complaint").)  The Court concludes that, with one exception, the Receiver properly ruled that these allegations do not state a cognizable claim.

> **1.    Derivative Claims**

Most of the claims in the Herbst Litigation fail to state a cognizable claim because they are derivative causes of actions.  Pursuant to the Receivership Order, "[t]he Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the partners, managers, officers, and directors of Penny Lane under applicable state and federal law and by the Charter, By-Laws and Partnership Agreement of said partnership, in addition to all powers and authority conferred upon the Receiver by the provisions of 15 U.S.C. § 687c and 28 U.S.C. § 754."  (Receivership Order ¶ 2.)  The Receivership Order also states that "[t]he Receiver shall assume and control the operation of Penny Lane and shall pursue and preserve all of its claims."  (Id.)  Thus, the Receiver is the only party that may properly bring a derivative suit on behalf of the partnership.  See United States v. Acorn Tech. Fund, L.P., 429 F.3d 438, 447 (3d Cir. 2005) (ruling that claims of investors in a SBIC could not assert claims that could only be brought in a derivative suit by the SBA as receiver for the SBIC).

In Acorn, investors in a New Jersey limited liability company that operated as an SBIC sought to sue the company and its general partner.  The plaintiff-investors alleged that the company had been mismanaged and that if they were informed that the company was not being managed in accordance with federal and state laws, they would not have invested or continued to invest.  The Third Circuit ruled that "despite creative characterization" the claims "reduce[d] to an allegation that they would not have invested, or have lost money on capital already invested, if

6

the company had been properly managed or had disclosed the mismanagement." Acorn, 429 F.3d at 447.  The Third Circuit found that "[i]n this, the [investors seeking to sue] suffered the same as all other investors" and that "[t]here was no special wrong done to the [investors seeking to sue] - the wrong was to the partnership, which lost almost all of its capital as a result." Id. The court concluded that this was a "classic derivative claim" under New Jersey law.  As such, the court ruled that the receivership order prevented the investors from asserting the claims. Id.

However, the parties have not briefed whether New Jersey law governs the issue of whether the claims are derivative or direct.  Presumably, Delaware law applies because PLP is a Delaware limited partnership and "[u]nder New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs." See Fagin v. Gilmartin, 432 F.3d 276, 282 (3d Cir. 2005) (citing Brotherton v. Celotex Corp., 493 A.2d 1337, 1339 n. 1 (N.J. Super. Ct. Law Div. 1985)).  The Delaware Supreme Court disapproves of an analysis based upon "special injury" or "special wrong," such as the one undertaken in Acorn.  Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004) (referring to the "special wrong" concept as "amorphous and confusing").  Under Delaware law, whether a claim is derivative or direct turns "soley on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Id. at 1033 (distinguishing direct and derivative claims in the corporate context).  "[U]nder Tooley, the duty of the court is to look at the nature of the wrong alleged, not merely at the form of words used in the complaint." In re Syncor Int'l Corp. Shareholders Litig., 857 A.2d 994, 997 (Del. Ch. 2004).

The Court concludes that, with one exception, the first fourteen causes of action in the

Herbst Litigation reduce to claims that the defendants did not manage PLP properly and misrepresented how it was being managed.[4]  Such claims involve alleged harms to the partnership and recovery on such claims would benefit the partnership.

For example, the "First Cause of Action" states that various misrepresentations regarding the management of the fund were made to the plaintiffs and that "[h]ad plaintiffs known of the true state of affairs, plaintiffs would not have purchased the partnership interests and nor expended additional monies thereafter." (Herbst Compl. ¶ 134.)  The various misrepresentations alleged concern the equal treatment of investors, defendants' lack of self dealing, their adherence to fiduciary duties, and investors' access to books, records and other information.  (Id. ¶ 117.)[5]  These allegations are substantially similar to the allegations in Acorn that the plaintiffs "would not have invested, or have lost money on capital already invested, if the company had been properly managed or had disclosed the mismanagement."  Indeed, these allegations concern a harm to the partnership.  Moreover, the partnership would benefit from any recovery on these grounds.   Therefore, the Court concludes that these claims are derivative claims.

Other causes of action in the Herbst Complaint also appear to be derivative.  The Herbst Parties' "Second Cause of Action" states that Defendants breached their "fiduciary duty . . . to ensure equal treatment of all investors . . . and that defendants would not take advantage of their insider knowledge position to enrich themselves at the expense of their investors." (Herbst Compl. ¶ 144.)  This is a classic derivative claim.  Pullman-Peabody Co. v. Joy Mfg. Co., 662 F.

---

[4] The one exception, discussed separately below, is Jackie Herbst's direct claim for fraud. The Fifteenth and Sixteenth causes of action are also discussed separately below.

[5] As part of the First Cause of Action in the Herbst Litigation, Jackie Herbst also alleges a direct claim for fraud.

Supp. 32, 35 (D.N.J. 1986) ("Claims of breach of fiduciary duty and of corporate waste are facially claims of injury to the corporation and clearly not individual bases for litigation"); Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 16 (Del. Ch. 1992 ) (holding that where limited partners' breach of fiduciary duty claim was, in fact, that the "alleged misconduct resulted in diminished income to the Partnership, diminished distributions to Unitholders and a diminished value of the Units" it could only be brought as a derivative claim).  Similarly, the "Sixth Cause of Action" appears to be a derivative claim for breach of fiduciary duty.  (Herbst Compl. ¶ 163.)  The "Third Cause of Action" and the "Fifth Cause of Action" are styled as breach of contract claims with respect to the partnership agreement.  (Id. ¶¶ 148, 157.)  These are derivative claims because any such breach would harm the partnership, not merely the Herbst Plaintiffs.  Next, the "Fourth Cause of Action" claims negligent management, which is plainly a derivative claim.  (Id. ¶ 151.)  The other claims, styled variously as trespass, conversion, emotional distress, tortious interference with property rights, RICO, unjust enrichment and conspiracy to defraud, are all based on the same alleged mismanagement and failure to disclose that underlies the above claims. Thus, the Court concludes that these additional claims are, in fact, derivative claims.

The Court concludes that the Receivership Order prevents the Herbst Parties from asserting these derivative claims.  Therefore, the Receiver properly denied this portion of the Herbst Parties' claims.

### 2. Direct Claim for Fraud by Jackie Herbst

Jackie Herbst alleges that the defendants in the Herbst litigation induced him to transfer part of his partnership interest by falsely representing that "the transfer of plaintiff Jackie

9

Herbst's [partnership] interest was only of a temporary nature." (Herbst Compl. ¶ 137.)  This claim is plainly a direct action: the harm is to Jackie Herbst, not the partnership, and Jackie Herbst, not the partnership, would receive the benefit from any recovery.

The Receiver has failed to address why the direct fraud claim of Jackie Herbst should be denied.  Upon a cursory review, it appears that Jackie Herbst may have stated a claim for common law fraud.[6]  The Herbst Complaint alleges that Jackie Herbst was fraudulently induced "by defendants, their partners, employees, agents, advisors and managers" to transfer part of his partnership interest to four defendants prior to a proposed initial public offering announcement. (Herbst Compl. ¶¶ 90, 112.) It further alleges that defendants falsely represented to Jackie Herbst that the transfer must be made as a "temporary measure" "due to emergency conditions, and to avoid Penny Lane's having 'critical problems' with the Small Business Administration" and that Jackie Herbst's partnership interests would not be adversely impacted.  (Id. ¶¶ 89-107, 112.) The Herbst Complaint also alleges that the defendants knew or should have known that the representation was false.  (Id. ¶ 116.)  Finally, the Herbst Complaint states that the transferred partnership interests were never returned.  (Id. ¶ 117.)

Thus the Court concludes that it is proper to resubmit Jackie Herbst's direct fraud claim to the Receiver with instructions to reevaluate the claim in light of this opinion.[7]

---

[6] The parties have also not briefed the issue of which State's law would apply to Jackie Herbst's direct fraud claim.

[7] The Court notes that the contracts relevant to the transfers, signed by Jackie Herbst, state that the "Assignor hereby irrevocably conveys, grants, transfers and assigns to the Assignee the Assigned Interest, free and clear of all liens and encumberances, effective as of the Effective Date." (Motion to Intervene and Lift Stay by Jackie Herbst, Ex. A at 2, 4, 6.)  The Receiver discusses this provision in the context of addressing the Fifteenth Cause of Action in the Herbst Litigation, which is a breach of contract claim.  Such a provision might not bar a claim of

### 3. The Remaining Claims in the Herbst Litigation

The "Fifteenth Cause of Action" in the Herbst Complaint asserts what appears to be a breach of contract against Birdie Capital Corporation, Steven Berger, Richard Rosenblum and Mark Barbera. There is no indication that this cause of action asserts a claim against Penny Lane or anyone in their managerial capacity. Thus, the Court agrees with the Receiver's recommendation to deny the claim with respect to this cause of action.

Similarly, the "Sixteenth Cause of Action" is not cognizable. This cause of action asserts that the SBA breached its duty to plaintiffs by failing to properly supervise, investigate and disclose pertinent information about PLP. The Third Circuit has concluded that, regardless of the plaintiff's characterization of the SBA as a regulator or investor, such claims are barred by the Federal Tort Claims Act, 28 U.S.C. § 2680(a), because they involve discretionary judgment decisions by the SBA.[8] Acorn, 429 F.3d at 445-447. Thus, the Court concludes that the Sixteenth Cause of Action is not a cognizable claim.

Finally, to the extent that the Herbst Parties' objections seek reconsideration of this

---

fraudulent inducement based on contrary oral guarantees. See, e.g., Homestead Development Corp. v. Ayres, 665 N.Y.S.2d 240 (N.Y. App. Div. 1997) ("Because the parties' agreement does not contain a merger clause disclaiming reliance on the representation that allegedly induced defendants to enter into the agreement, parol evidence is admissible to establish the fraudulent inducement."). On its reevaluation, if necessary, the Receiver should consider the effect of this provision on the direct fraud claims.

[8] 28 U.S.C. § 2680 states, in relevant part:
The provisions of this chapter and section 1346(b) of this title shall not apply to--
(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Courts prior denial of their Motion for Leave to Intervene (Jackie Herbst's Objection ¶ 9 ("Petitioner believes that his submitted motion to intervene was incorrectly denied")), that request is denied as untimely under Local Civil Rule 7.1(i). Local Civil Rule 7.1(i) provides that "[a] motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge." Magistrate Judge Hughes denied the Herbst Parties' motion in an order entered on February 4, 2008. The Herbst Parties' present brief was not filed until April 2, 2008, well after the ten business day time period.

### III. CONCLUSION

For the foregoing reasons, the motion of Abraham Herbst objecting to the Receiver's recommended disposition of his claim is denied, and the motion of Jackie Herbst objecting to the Receiver's recommended disposition of his claim is granted in part and denied in part. An appropriate form of order is filed herewith.

Dated: July 23, 2008

                                                    s/ Garrett E. Brown, Jr.
                                                   GARRETT E. BROWN, JR., U.S.D.J.